

JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COASTAL INVESTMENT PARTNERS, LLC, <br><br> Plaintiff, <br><br> -against- <br><br> DSG GLOBAL, INC. <br><br> Defendant. | **17 CV 4427** <br><br> Civil Action No.: -CV- <br><br> **COMPLAINT** |

Plaintiff Coastal Investment Partners, LLC ("Plaintiff" or "Coastal"), by its attorneys Robinson Brog Leinwand Greene Genovese & Gluck P.C., as and for its Complaint against Defendant DSG Global, Inc. ("DSG" or "Defendant") herein, alleges as follows:

### NATURE OF THE ACTION

1. DSG and Coastal entered into an agreement memorialized in a series of contemporaneously executed documents dated November 7, 2016, including but not limited to a securities purchase agreement (the "SPA") and three convertible promissory notes in the principal amounts of $138,888.89 (the "$138,888.89 Note"), $72,500 (the "$72,500 Note"), and $50,000 (the "$50,000 Note", with the three notes hereinafter collectively referred to as the "Notes"). The Notes were due and payable on May 7, 2017 (the "Maturity Date"), and have not been repaid.

2. Under the terms of the $72,500 Note, Coastal had the right to submit requests to DSG for conversion of the principal amount of the $72,500 Note, or any portion thereof, into common stock of DSG at price set forth in the $72,500 Note. DSG's obligation under the $72,500 Note to issue shares pursuant to a conversion notice is absolute and unconditional. However, despite Coastal duly submitting a conversion notice to DSG dated May 25, 2017, DSG

refused to effect the conversion with the permissible time frame, and DSG's default for the reasons set forth below is causing Coastal irreparable harm.

3.     This action seeks (i) a declaratory judgment that DSG is in default in repayment of the Notes, and that its willful refusal to issue shares of its common stock to Coastal is in breach of its obligations under the $72,500 Note, (ii) damages flowing from breach of the Notes, and (iii) preliminary and permanent injunctive relief.

## THE PARTIES

4.     Plaintiff Coastal is limited liability company. Its membership comprises two LLCs whose members are citizens of New York, California, Florida and New Jersey.

5.     Upon information and belief, DSG is a corporation formed under the laws of the State of Nevada, with a principal place of business in Surrey, Canada. Shares of DSG are publicly traded on OTC Markets under the stock symbol DSGT.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, based upon the parties' diversity of citizenship, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.     This Court has personal jurisdiction over DSG pursuant to the transactional documents at issue, which provide that DSG consents to the exclusive jurisdiction of state and federal courts sitting in the City of New York, Borough of Manhattan ("New York Courts"), for any dispute arising from the transaction. The Notes further provide that DSG irrevocably waives and agrees not to assert any objection based on personal jurisdiction in the New York Courts.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) as DSG is deemed to reside in the Southern District of New York, pursuant to its consent to the Court's personal jurisdiction.

## PERTINENT PROVISIONS OF THE $72,500 NOTE

9. Page 1 of the $72,500 Note provides that DSG promises to pay the principal amount of $72,500 to Coastal on or before May 7, 2017.

10. Section 4(a) of the $72,500 Note provides in part:

> <u>Voluntary Conversion</u>. At any time after the Original Issue Date until this $72,500 Note is no longer outstanding, this $72,500 Note shall be convertible, in whole or in part, into shares of Common Stock at the option of the Holder, at any time and from time to time…The Holder shall effect conversions by delivering to the Company a Notice of Conversion…specifying therein the principal amount of this $72,500 Note to be converted and the date on which such conversion shall be effected…

11. Section 4(c)(ii) of the $72,500 Note provides in part:

> <u>Delivery of Certificate Upon Conversion</u>. Not later than three (3) Trading Days after each Conversion Date (the "<u>Share Delivery Date</u>"), the Company shall deliver, or cause to be delivered, to the Holder a certificate or certificates representing the Conversion Shares which, on or after the earlier of (i) the six month anniversary of the Original Issue Date or (ii) the Effective Date, shall be free of restrictive legends and trading restrictions…

12. Section 4(c)(iv) of the $72,500 Note provides in its entirety:

> <u>Obligation Absolute; Partial Liquidated Damages</u>. The Company's obligations to issue and deliver the Conversion Shares upon conversion of this $72,500 Note in accordance with the terms hereof are absolute and unconditional, irrespective of any action or inaction by the Holder to enforce the same, any waiver or consent with respect to any provision hereof, the recovery of any judgment against any Person or any action to enforce the same, or any setoff, counterclaim, recoupment, limitation or termination, or any breach or alleged breach by the Holder or any other Person of any obligation to the Company or any violation or alleged violation of law by the Holder or any other Person, and irrespective of any other circumstance which might otherwise limit such obligation of the Company to the Holder in connection with the issuance of such

Conversion Shares; provided, however, that such delivery shall not operate as a waiver by the Company of any such action the Company may have against the Holder. In the event the Holder of this $72,500 Note shall elect to convert any or all of the outstanding principal amount hereof, the Company may not refuse conversion based on any claim that the Holder or anyone associated or affiliated with the Holder has been engaged in any violation of law, agreement or for any other reason, unless an injunction from a court, on notice to Holder, restraining and or enjoining conversion of all or part of this $72,500 Note shall have been sought and obtained, and the Company posts a surety bond for the benefit of the Holder in the amount of 150% of the outstanding principal amount of this $72,500 Note, which is subject to the injunction, which bond shall remain in effect until the completion of arbitration/litigation of the underlying dispute and the proceeds of which shall be payable to the Holder to the extent it obtains judgment. In the absence of such injunction, the Company shall issue Conversion Shares or, if applicable, cash, upon a properly noticed conversion. If the Company fails for any reason to deliver to the Holder such certificate or certificates pursuant to Section 4(c)(ii) by the Share Delivery Date, the Company shall pay to the Holder, in cash, as liquidated damages and not as a penalty, for each $1,000 of principal amount being converted, $10 per Trading Day (increasing to $20 per Trading Day on the fifth (5th) Trading Day after such liquidated damages begin to accrue) for each Trading Day after such Share Delivery Date until such certificates are delivered or Holder rescinds such conversion. Nothing herein shall limit a Holder's right to pursue actual damages or declare an Event of Default pursuant to Section 6 hereof for the Company's failure to deliver Conversion Shares within the period specified herein and the Holder shall have the right to pursue all remedies available to it hereunder, at law or in equity including, without limitation, a decree of specific performance and/or injunctive relief. The exercise of any such rights shall not prohibit the Holder from seeking to enforce damages pursuant to any other Section hereof or under applicable law.

13. Section 6(a)(ix) of the $72,500 Note provides for an Event of Default where:

   the Company shall fail for any reason to deliver certificates via DWAC to a Holder prior to the third Trading Day after a Conversion Date pursuant to Section 4(c) or the Company shall provide at any time notice to the Holder, including by way of public announcement, of the Company's intention to not honor requests for conversions of any Notes in accordance with the terms hereof;

14. Section 7(d) of the $72,500 Note provides in part:

> ...If any party shall commence an action or proceeding to enforce any provisions of this $72,500 Note, then the prevailing party in such action or proceeding shall be reimbursed by the other party for its attorney's fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding.

15. Section 7(g) of the $72,500 Note provides in part:

> ...The Company acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Holder and that the remedy at law for any such breach may be inadequate. The Company therefore agrees that, in the event of any such breach or threatened breach, the Holder shall be entitled, in addition to all other available remedies, to an injunction restraining any such breach or any such threatened breach, without the necessity of showing economic loss and without any bond or other security being required...

## ALLEGATIONS COMMON TO ALL CLAIMS

16. DSG executed the Notes in favor of Coastal in the principal amounts of $72,500, $138,888.89 and $50,000, each with a maturity date of May 7, 2017.

17. The $72,500 Note provides that "at any time after the Original Issue Date until this $72,500 Note is no longer outstanding, this $72,500 Note shall be convertible, in whole or in part, into shares of Common Stock at the option of the Holder ..."

18. Pursuant to the terms of the $72,500 Note, on or about May 25, 2017, Coastal submitted to DSG a Notice of Conversion (the "Conversion Notice") electing to convert $57,000 principal amount of the $72,500 Note into 1,140,000 shares of common stock of DSG.

19. DSG failed to issue the shares by the Share Delivery Date which constitutes a default under the $72,500 Note.

20. Further, DSG has expressly represented to Coastal its refusal to honor the Conversion Notice, despite the lack of any authority to do so. In an email dated May 31, 2017,

Bob Silzer, CEO of DSG, advised Coastal that "the transfer agent will not be honoring any further conversion requests from Coastal."

21. Upon information and belief, DSG also wrongfully, maliciously and without good cause instructed its transfer agent to not issue shares to Coastal pursuant to the Notice of Conversion notwithstanding that all of the legal predicates to issuance of the shares to Coastal have been satisfied.

22. On May 22, 2017, DSG filed a Form 10-Q for the quarterly period ended March 31, 2017, which states that Total Current Assets is $300,793, Total Current Liabilities is $8,231,478, "Net cash used in operating activities" is -$162,804, and for the three-month period ended March 31, 2017, DSG posted a Net loss of $2,471,875.

23. On information and belief, DSG is continuing to issue shares of Common Stock to other parties, resulting in the dilution of the value of the shares of Common Stock currently owed to Coastal. On information and belief DSG is intentionally refusing to honor Coastal's Conversion Notice to show preference to other holders of its debt.

24. DSG has refused to honor the Notes and asserts without basis that they are unenforceable.

## FIRST CAUSE OF ACTION FOR INJUNCTIVE RELIEF

25. Coastal repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

26. Pursuant to the Notes, DSG is obligated to deliver to Coastal the common stock identified in the Conversion Notice.

27. Despite its obligation to do so, DSG has failed and refused to deliver the shares or honor the Conversion Notice.

28. As a result of such refusal, Coastal has suffered and continues to suffer damages.

29. Coastal has no adequate remedy at law.

30. In the absence of injunctive relief, Coastal will suffer irreparable harm.

31. Coastal seeks an order requiring DSG to immediately comply with the Conversion Notice and deliver the shares requested therein, and to comply with all such duly submitted future Conversion Notices.

## SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF

32. Coastal repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

33. There is a real and actual controversy between Coastal and DSG regarding the enforceability of the Notes.

34. DSG has refused to honor the Notes and Coastal is and has been harmed by DSG's refusal.

35. Coastal requires specific relief through a decree of a conclusive character that the Notes are enforceable agreements.

## THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT

36. Coastal repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

37. Coastal and DSG are parties to the Notes and SPA, which are valid and enforceable contracts.

38. Coastal has fulfilled all of its obligations under the Notes and SPA.

39.  DSG has breached its obligations by, *inter alia*, failing to repay the principal amounts by the Maturity date, by failing to honor the Conversion Notice and by instructing its transfer agent to not convert the requested sum into shares of common stock.

40.  DSG is liable for contract damages to DSG, including without limitation, for the unpaid outstanding principal of the Notes with interest, additional damages in an amount to be determined at trial, plus costs, disbursements and reasonable attorneys' fees.

WHEREFORE, Plaintiff demands judgment against Defendant, as follows:

a.  On the First Cause of Action, for a preliminary and permanent injunction directing DSG to honor the outstanding and future Conversion Notices pursuant to the $72,500 Note, and that DSG must instruct its transfer agent to process the issuance of the shares free of any further restrictions on transfer of the shares; and

b.  On the Second Cause of Action, for declaratory relief that the Notes are enforceable agreements;

c.  On the Third Cause of Action, for damages in favor of the Plaintiff and against DSG, in an amount to be determined at trial but not less than $250,000, and its costs and reasonable attorney's fees;

d.  For such other and further relief as to the Court may appear just and proper under the circumstances, together with the interest, costs and disbursements hereof.

Dated: New York, New York  
June 12, 2017

ROBINSON BROG LEINWAND  
GREENE GENOVESE & GLUCK P.C.

By: _____  
David E. Danovitch  
Michael A. Eisenberg  
875 Third Ave, 9th Floor  
New York, NY 10022-0123  
(212) 603-6300  
*Attorneys for Plaintiff*