USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/5/18_____

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
COASTAL INVESTMENT PARTNERS, LLC,

                    Plaintiff,
                                        17 Civ. 4427 (DAB)
                                        MEMORANDUM & ORDER
          v.

DSG GLOBAL, INC.,

                    Defendant.
------------------------------------X
```
**DEBORAH A. BATTS, United States District Judge.**

On June 13, 2017, Plaintiff Coastal Investments Partners, LLC filed a Complaint and Motion for a Preliminary Injunction seeking conversion of the principal amount of three notes issued by it to Defendant DSG Global, Inc. into common stock of DSG Global, Inc. Specifically, Plaintiff brings causes of action for injunctive relief, seeking to require Defendant to comply with the conversion notice (Count I); declaratory relief, seeking a ruling that the three notes are enforceable (Count II); and breach of contract related to the notes and a securities purchase agreement (Count III). In response, Defendant filed a Cross Motion to Dismiss, asserting that the notes in question are usurious and thus void under New York law. The Court denied Plaintiff's Motion for a Preliminary Injunction on July 31, 2017. The Court now addresses Defendant's Cross Motion to Dismiss. For the following reasons, the Court DENIES the Motion.

I.  BACKGROUND

The parties entered into a series of Agreements on November 7, 2016: the Securities Purchase Agreement (the "SPA") and three convertible promissory notes with principal amounts of $138,889.89 (Decl. Bob Silzer in to Opp. Prelim. Inj. And in Supp. of Cross-Mot. to Dismiss ("Silzer Decl.") Ex. 1 (the "$138,888.89 Note")), $72,500 (Silzer Decl. Ex. 2 (the "$72,500 Note")), and $50,000 (Silzer Decl. Ex. 3 (the "$50,000 Note")) (collectively, the "Notes"). (Compl. ¶ 1.) The Notes had a maturity date of May 7, 2017 but have not been repaid. (Id.)

The $138,888.89 Note had a purchase price of $125,000 and a principal amount of $138,888.89. ($138,888.89 Note at 1.) In other words, Defendant received $125,000 from Plaintiff, with an original issue discount ("OID") of $13,888.89.[1] It provides that

---

[1] The investment education website Investopedia describes an original issue discount as follows:
> The OID is the difference between the price a [debt instrument] is sold at and the [instrument's] actual face value, also known as par. The OID may be seen as a form of interest, since the buyer receives the face value of the bond even though he paid less than par when it was purchased. In contrast to regular interest rates on a bond, this form of interest is not calculated or paid on a monthly basis. Instead, it is only awarded as a total sum, along with the principal invested, at the time of maturity.

Original Issue Discount – OID, Investopedia, https://www.investopedia.com/terms/o/oid.asp.

Defendant promises to pay Plaintiff the principal sum of $138,888.89 on May 7, 2017 at an 8% annual interest rate. (<u>Id.</u>)

The $72,500 Note had a purchase price of $10,000 and a principal amount of $72,500. ($72,500 Note at 1.) On this Note, Defendant received $10,000 from Plaintiff, with an OID of $62,500. It also sets forth an 8% annual interest rate. (<u>Id.</u>)

The $50,000 Note had a purchase price of $10,000 and a principal amount of $50,000. ($50,000 Note at 1.) Put another way, Defendant received $10,000 from Plaintiff, with an OID of $40,000. Like the other two, it sets forth an 8% annual interest rate. (<u>Id.</u>)

The Notes shared several commonalities. On their face, the $72,500 and $50,000 Notes discuss a larger series of financial transactions. The $72,500 Note states that $62,500 of the $72,500 Note "may be redeemed by [Defendant] for $1.00 at any time prior to the Maturity Date in the event that [the $138,888.89 Note] is exchanged or otherwise into a revolving credit facility, with the balance of $10,000 being rolled into that same credit facility." ($72,500 Note at 1.) The $50,000 Note states that it presents a commitment by Defendant to complete the closing of a $5,000,000 equity purchase agreement with Plaintiff. ($50,000 Note at 1.) It further provides that if Defendant does not complete a registration statement within 30 days of the equity purchase agreement, the principal amount of

3

the Note "shall automatically increase by $25,000," and if the registration statement is not declared effective by the SEC within 120 days of the equity purchase agreement, the principal amount of the Note "shall automatically increase by an additional $25,000." (Id.)

Each Note contains a prepayment penalty. If Defendant were to prepay the Note, it would have to pay 1.2 times the principal amount, or 1.35 times the principal in the case of default. ($138,888.89 Note § 2(b); $72,500 Note § 2(b); $50,000 Note § 2(b)[2].)

Section 4 of the Notes details how the note is convertible into stock: it is "convertible, in whole or in part, into shares of Common Stock at the option of [Plaintiff]" after Plaintiff delivers a notice of conversion. ($138,888.89 Note § 4(a); $72,500 Note § 4(a); $50,000 Note § 4(a).) Section 4(b) provides for the conversion price. ($138,888.89 Note § 4(b); $72,500 Note § 4(b); $50,000 Note § 4(b).) In accordance with the conversion provisions, Defendant's "obligations to issue and deliver the Conversion Shares upon conversion of this Note . . . are absolute and unconditional." ($138,888.89 Note § 4(c)(iv); $72,500 Note § 4(c)(iv); $50,000 Note § 4(c)(iv).) Failure to deliver the shares constitutes a default and subjects Defendant

---

[2] The Notes all contain two Sections 2(b). In using "§ 2(b)," the Court refers to the one with the heading "Prepayment."

to various penalties. ($138,888.89 Note §§ 4(c)(iv), 6(a)(ix), 6(b); $72,500 Note §§ 4(c)(iv), 6(a)(ix), 6(b); $50,000 Note §§ 4(c)(iv), 6(a)(ix), 6(b).)

The Notes also contain severability or usury savings clauses, which state that "any interest or other amount deemed interest due hereunder violates the applicable law governing usury, the applicable rate of interest hereunder shall automatically be lowered to equal the maximum rate of interest permitted under applicable law." ($138,888.89 Note § 7(f); $72,500 Note § 7(f); $50,000 Note § 7(f).)

Plaintiff submitted a notice of conversion to Defendant on May 25, 2017, seeking to convert $57,000 into 1,140,000 shares of Defendant's common stock. (Compl. ¶ 18; Miles Riccio Decl. in Supp. of Order to Show Cause for Prelim. Inj. ("Riccio Decl.") Ex. F.) Defendant, however, has not delivered any shares to Plaintiff and has expressly refused to honor the conversion notice. (Compl. ¶¶ 19-20; Riccio Decl. Ex. G.)

Plaintiff filed suit on June 13, 2017. The same day, in addition to delivering its Complaint to Chambers, Plaintiff delivered an Order to Show Cause for Preliminary Injunction, which was subsequently signed by the Court on June 27, 2017. (ECF No. 5.) Plaintiff subsequently filed its Preliminary Injunction papers via ECF on July 11, 2017. The Court held a Preliminary Injunction Hearing on July 26, 2017. The Motion

5

papers, the Hearing, and the Court's subsequent Memorandum & Order denying the Preliminary Injunction primarily focused on the solvency of Defendant's business. Plaintiff's attorney conceded that the subsequent transactions contemplated in the Notes related to the revolving credit facility were never consummated. (Tr. 6::6-13.)

II. Discussion

Defendant seeks to dismiss Plaintiff's Complaint on the ground that the Notes are criminally usurious as a matter of law. It offers several reasons why the Notes are usurious: (1) looking at the original issue discounts, the Court should look to the amount actually received pursuant to the Notes, making the interest rate in excess of the statutory rate; (2) the reservation of shares make the Notes usurious; (3) the default interest rate makes the Notes usurious because the stock discount is disguised interest; and (4) that the prepayment penalties violate the usury laws. Defendant argues that criminally usurious notes are void <u>ab initio</u>.

A. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is

plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Supreme Court further stated,

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, which, like the complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Id. at 555. In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

B. What Documents the Court Will Consider

As an initial matter, Defendant seeks to introduce many exhibits, attached to the Declaration of Bob Silzer, Defendant's Chief Executive Officer, in support of its Motion to Dismiss. The Notes are expressly incorporated by reference in the Complaint (see, e.g., Compl. ¶ 16), so it is appropriate to consider them here. See DiFolco, 622 F.3d at 111. The stock reservation letter, attached as Exhibit 4 to the Silzer

Declaration, is not incorporated by reference in the Complaint. Exhibit 5 purports to show the amount Defendant actually received pursuant to the Notes. However, this document is not incorporated by reference in the Complaint, and the Court has no way to verify its accuracy without converting the instant Motion into a motion for summary judgment. Exhibits 6, 7, and 8 are various reports related to Defendant's finances. They relate primarily to the issue of Defendant's solvency, which is not at issue here, and they are not incorporated by reference in the Complaint. The Court thus will not consider Exhibits 4 to 8 to the Silzer Declaration.

"When interpreting contracts, it is accepted that separate agreements executed contemporaneously and that are part of a single transaction are to be read together." <u>Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S</u>, 907 F. Supp. 2d 401, 413 (S.D.N.Y. 2012). The parties agree that the Court should consider all of the Notes together. They were all executed on the same day by the same parties and include references to one another.

    C. New York Usury Law

Under New York Penal Law § 190.40, a loan is criminally usurious when the lender "charges . . . as interest on the loan . . . a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period." N.Y. Penal Law

§ 190.40.[3] "Usury is an affirmative defense and a heavy burden rests upon the party seeking to impeach a transaction for usury." Hillair Capital Invs., L.P. v. Integrated Freight Corp., 963 F.Supp.2d 336, 339 (S.D.N.Y. 2013) (citing Gandy Mach., Inc., v. Pogue, 483 N.Y.S.2d 744, 745 (N.Y. App. Div. 3d Dep't 1984)); see also Zhavoronkin v. Koutmine, 52 A.D.3d 597, 562 (N.Y. App. Div. 2d Dep't 2008) ("There is a strong presumption against a finding of usury, and . . . the defendant [must] establish usury by clear and convincing evidence."). A party asserting a usury defense must prove that the lender "(1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance. The first element requires proof of the general intent to charge a rate in excess of the legal rate rather than the specific intent to violate the usury statute." Hufnagel v. George, 135 F. Supp. 2d 406, 407 (S.D.N.Y. 2001) (emphasis in original) (quoting In re Venture Mortg. Fund, L.P., 245 B.R. 460, 473–74 (Bankr. S.D.N.Y. 2000), aff'd, 282 F.3d 185 (2d Cir. 2002)); see also 72 N.Y. Jur. 2d Interest and Usury § 55 (setting forth elements of usury claim).

---

[3] Because Defendant is a corporation, the civil usury defense is unavailable to it. Scantek Med., Inc. v. Sabella, 582 F. Supp. 2d 472, 474 (S.D.N.Y. 2008).

D. Application

1. Original Issue Discount

Defendant argues that the Notes are usurious on their faces because of the original issue discounts. Plaintiff argues, because the Notes contemplated a larger transaction involving an equity line of credit and a revolving line of credit to Defendant, Defendant had the option to repay the loan at a non-usurious rate. It also argues that whether Plaintiff had the requisite usurious intent is an issue of fact.

Factoring in the original issue discount, although the Notes indicate on their faces that Defendant received $145,000 from Plaintiff, there was an outstanding principal of $261,388.90. It is possible that an original issue discount could render a loan usurious. See Hammelburger v. Foursome Inn Corp., 437 N.Y.S.2d 356, 358 (N.Y. App. Div. 2d Dep't 1980), order modified and aff'd, 54 N.Y.2d 580, (N.Y. 1981) ("The discount, divided by the number of years in the term of the [loan], should be added to the amount of interest due in one year, and this sum is compared to the difference between the principal and the discount in order to determine the true interest rate."); In re Powerburst Corp., 154 B.R. 307, 313 (Bankr. E.D. Cal. 1993) (applying New York law, citing Hammelburger, and writing, "To determine if notes are usurious, the court should add the original issue discount to the interest

charged to determine the actual interest rate on the loan."). However, in this case, the Notes also contemplate a larger series of transactions. For example, Defendant alleges it did not receive $62,500 of the $72,500 Note, but it could redeem the $62,500 for $1.00 in the event that the $138,888.89 Note was exchanged "into a revolving credit facility." (Silzer Decl. Ex. 2, at 1.) So while it is possible under the terms of the Notes that Defendant might pay an interest rate in excess of 25%, it is also possible that Defendant could have redeemed the $62,500 for $1.00, placing the interest rate closer to the stated 8%. The mere _possibility_ that the lender would receive in excess of the statutory 25% maximum does not render the Notes usurious as a matter of law. See _KBM World Wide, Inc. v. Hangover Joe's Holding Corp._, No. 15-CV-7254(SJF)(GRB), 2017 WL 685606, at *4 (E.D.N.Y. Feb. 1, 2017), _report and recommendation adopted_, 2017 WL 680418 (E.D.N.Y. Feb. 21, 2017) ("[A] payment may not be considered usurious where, as here, said payment is based upon a contingency within the control of the debtor.'" (quoting _Salamone v. Russo_, 129 A.D.3d 879, 881 (N.Y. App. Div. 2d Dep't 2015))); _Lehman v. Roseanne Inv'rs Corp._, 106 A.D.2d 617, 618 (N.Y. App. Div. 2d Dep't 1984) ("[T]here is a strong presumption against the finding of usurious intent and that a loan is not usurious merely because there is a _possibility_ that the lender

will receive more than the legal rate of interest.") (emphasis added).

Furthermore, the Court views the Notes together, and they plainly contemplate a larger series of transactions, including the possibility of a revolving credit facility. It may be that Plaintiff would not have entered into the Notes and agreed to negotiate a revolving credit facility absent the OID. This is speculative. This issue relates to Plaintiff's intent at the time it entered into the Notes as well as the adequacy of consideration. In general, it is inappropriate for a court to probe into the adequacy of consideration, see Rooney v. Tyson, 91 N.Y.2d 685, 701 (N.Y. 1998) ("Typically, a court will not inquire into the adequacy of consideration supporting the parties' agreement since even the 'slightest consideration is sufficient to support the most onerous obligation.'" (quoting Mencher v. Weiss, 306 N.Y. 1, 8 (N.Y. 1953))); Moezinia v. Ashkenazi, 26 N.Y.S.3d 192, 193 (N.Y. App. Div. 2d Dep't 2016) ("[A]bsent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial review."). Furthermore, Plaintiff's intent is a question of fact that cannot be resolved at the Motion to Dismiss stage.[4] Accordingly,

---

[4] Plaintiff also argues that the usury savings clauses in the Notes is indicative of its lack of intent to violate the usury statute. The Court notes that general intent, not specific intent, is all that is required to make out a criminal usury

13

the Court rejects Defendant's arguments that the OID makes the Notes usurious.

### 2. Reservation of Shares

Defendant also argues that the Notes are criminally usurious because they require Defendant to reserve shares as security for the loans to set aside for the conversion option. Although the Court has previously stated it will not consider Exhibits 4 or 8 to the Silzer Declaration, it accepts, for the purpose of this argument, that Defendant was required to reserve 22,000,000 shares with a value of $2,640,000. The Court makes no finding as to the number or value of the shares at this time.

In support of its argument, Defendant cites New York General Obligations Law § 5-511, which states that "[a]ll . . . notes . . . whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money,

---

claim. In re Venture Mortg. Fund, L.P., 282 F.3d 185, 188 (2d Cir. 2002) ("A loan is usurious if the lender intends to take and receive a rate of interest in excess of that allowed by law even though the lender has no specific intent to violate the usury laws.") (quoting Hammond v. Marrano, 451 N.Y.S.2d 484, 485 (N.Y. App. Div. 4th Dep't 1982)). Under New York law, a "'usury avoidance clause' does not, by itself, save an agreement from a charge of usury. However, the clause may be relevant to the issue of intent." Hillair Capital Invs., 963 F. Supp. 2d at 338 (internal citations omitted). The Court does not make a finding here about the effect of the usury savings clause as it relates to an issue of fact.

goods or other things in action, than is prescribed in section 5-501, shall be void." Section 5-501 is New York's civil usury statute, which prohibits a lender from collecting on a loan with interest payment exceeding 16% per annum. N.Y. Gen. Obl. Law § 5-501; Sabella v. Scantek Med., Inc., No. 08-cv-453, 2009 WL 3233703, at *16 (S.D.N.Y. Sept. 25, 2009).

This argument fails though because, on its face, § 5-511 applies to civil, not criminal usury. Corporations, including Defendant in this action, cannot assert a civil usury defense. See supra n.2; Adar Bays, LLC v. Aim Expl., Inc., 285 F. Supp. 3d 698, 704 (S.D.N.Y. 2018) (citing Sabella, 2009 WL 3233703, at *16). Defendant's Motion to Dismiss is thus denied on this basis.

### 3. Default Interest Rate

Defendant next argues that the default provisions cause the Notes to violate the criminal usury laws. The Notes provide that, following default, interest will accrue at a "rate equal to the lesser of 1.5% per month (18% per annum) or the maximum rate permitted under applicable law." (See, e.g., Silzer Decl. Ex. 1 § 6(b).) As a preliminary matter, the Court notes that it is unsettled under New York law whether usury statutes apply to defaulted debts. Adar Bays, 285 F. Supp. 3d at 704. However, as in Adar Bays, LLC v. Aim Exploration, the Court need not resolve

15

this question because Defendant's arguments fail for separate reasons. See id.

Defendant asserts that when read in conjunction with the OID, the default interest rate is actually 58%. Defendant's argument fails for the same reasons that the Court rejects its arguments with respect to the original issue discount. On its face, an 18% interest rate is not criminally usurious.

Defendant also argues that the default interest rate is actually higher than the stated 18% because of the discount on share conversions. The Notes provide that, in the event of default, Plaintiff may require Defendant to "convert all or any part of this Note into Common Stock at the Alternate Conversion Price." (Ex. 1 § 4(b).) The Alternate Conversion price is defined as "the lesser of (i) the closing price of the Common Stock on the issuance date of the Note or (ii) 80% of the lowest traded price in the fifteen (15) Trading Days prior to the Conversion Date." (Id. at 2.)[5]

The Court adopts Judge Marrero's reasoning in Adar Bays with respect to this issue. Judge Marrero noted, first, that the plaintiff could have chosen to be repaid in cash and that that

---

[5] Defendant refers to a 40% stock discount in its Motion. (Def.'s Mot. at 12-13.) Defendant does not cite to a Note, and it is unclear to the Court where this number appears. The Court notes that Defendant's attorney, Mr. Basile, has filed many other motions asserting a usury defense, including three before this Court, with nearly identical contracts.

would not have been usurious. Adar Bays, 285 F. Supp. 3d at 702. Second, he reasoned that there were a number of circumstances under which the lender would realize no profit from the stock conversion as stock is not necessarily fully liquid. Id. For example, the stock price might plummet following submission of a conversion notice.[6] Id. All of this is speculative, but Judge Marrero's opinion points to the underlying issue: this involves questions of fact that are inappropriate to resolve at the Motion to Dismiss stage.

For example, although Defendant indicates that its stock was priced at $0.12 per share at the time the Notes were issued, it is unclear what the lowest traded price of the stock was in the 15 days prior to the conversion date. Defendant has submitted some evidence related to its stock price, but it is not for the applicable time period and the Court has declined to consider it. See supra Part II.B; Silzer Decl. Ex. 8.[7] The Court

---

[6] In fact, Mr. Silzer notes that the conversion notice caused the price per share to drop significantly. (Silzer Decl. ¶ 27.)
[7] While courts "are entitled to take judicial notice of well publicized stock prices without converting the motion to dismiss into one for summary judgment," Acticon AG v. China N. E. Petroleum Holdings Ltd., 692 F.3d 34, 37 n.1 (2d Cir. 2012), it is not clear that Defendant's stock price was well publicized. See Tr. 3:3 (indicating that Defendant's stock "is traded on the OTC markets"); Over-The-Counter (OTC), Investopedia, https://www.investopedia.com/terms/o/otc.asp ("The phrase 'over-the-counter' can be used to refer to stocks that trade via a dealer network as opposed to on a centralized exchange.").

will not get into a complicated math equation based on speculative values at this stage.

Defendant also argues that because Plaintiff forced it to pay $27,000 in legal fees, the Notes were usurious. Defendant cites no law for this proposition. To the contrary, "a borrower may pay reasonable expenses attendant on a loan without rendering the loan usurious." Lloyd Corp. v. Henchar, Inc., 80 N.Y.2d 124, 127 (N.Y. 1992). Attorneys' fees associated with the loan can constitute reasonable expenses. Hillair Capital Invs., 963 F. Supp. 2d at 339. "However, when fee payments do not actually reimburse lenders for expenses associated with the loan, and instead are a disguised loan payment, then such fee expenses can be considered in determining the interest rate." Id.

Defendant has not argued here that the $27,000 in attorneys' fees were not expenses associated with the Notes. There is little documentation before the Court as to what the $27,000 in fees were for. This is an issue of fact that the Court will not address on a Motion to Dismiss.

Accordingly, the Court rejects Defendant's argument that the default provisions render the Notes usurious.

####     4.    Prepayment Penalties

Finally, Defendant argues that the prepayment penalties contained in the Notes render them usurious. The Notes provide that if Defendant opts to prepay the Note, it must pay Plaintiff 1.20 times the outstanding principal amount. (Ex. 1 § 2(b).) In the event of default, Defendant must pay the outstanding principal amount multiplied by 1.35. (Id.)

Defendant's argument fails for two reasons. First, prepayment is a contingency within Defendant's control. See KBM World Wide, 2017 WL 685606, at *4; Salamone, 129 A.D.3d at 881. Second, it is not clear that prepayment penalties constitute interest for the purposes of the criminal usury law. Defendant cites no case law in support of this proposition. Rather, the sparse case law concerning voluntary prepayment and corresponding penalties suggests that any prepayment charges do not constitute interest. See Hughley v. Gillespie, 631 N.Y.S.2d 374, 374 (N.Y. App. Div. 2d Dep't 1995); Feldman v. Kings Highway Sav. Bank, 102 N.Y.S.2d 306, 307 (N.Y. App. Div. 2d Dep't), aff'd, 303 N.Y. 675 (N.Y. 1951). Further, although the civil usury law contains certain limitations related to prepayment, see N.Y. Gen. Oblig. Law §§ 5-501(3)(b) and 5-501(7), the criminal usury statute contains no such limitation.

Accordingly, Defendant's Motion is also denied on this basis. Because the Court has determined that the Notes are not

criminally usurious as a matter of law, it need not determine whether criminally usurious notes are void <u>ab initio</u>. This remains an open question under New York law. <u>See</u> <u>Adar Bays</u>, 285 F. Supp. 3d at 705-06.

III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED.

SO ORDERED.

DATED:   New York, NY
         June 6, 2018

*Deborah A. Batts*
Deborah A. Batts
United States District Judge